T.C. Summary Opinion 2009-93

UNITED STATES TAX COURT

CHARLES L. AND DEBORAH J. BEASLEY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15470-07S.                Filed June 10, 2009.

<u>Gerald C. Baker</u>, for petitioners.

<u>Roger W. Bracken</u>, for respondent.

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7463 of the Internal
Revenue Code in effect when the petition was filed.[1]  Pursuant to
section 7463(b), the decision to be entered is not reviewable by

_____

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the years in issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined Federal income tax deficiencies and accuracy-related penalties as follows:

|       |            | Penalties     |
| Year  | Deficiency | Sec. 6662(a)  |
| ----- | ---------- | ------------- |
| 2003  | $17,589    | $3,517.80     |
| 2004  | 9,608      | 1,921.60      |
| 2005  | 5,570      | 1,114.00      |

The issues for decision are: (1) Whether petitioners' charter fishing activity was not engaged in for profit; and (2) whether petitioners are liable for the accuracy-related penalties.

## Background

Some of the facts have been stipulated, and we incorporate the stipulation and accompanying exhibits by this reference. Petitioners were married and living in Maryland during the years at issue and at the time they filed the petition.

During the years at issue Charles Beasley (petitioner) was employed full time as an estimator and project manager for a heating, ventilating, and air conditioning installer. Mrs. Beasley was employed full time as a Washington Metropolitan Area Transit Authority police officer. Petitioner completed high school, as well as 5 years of trade school. Mrs. Beasley also completed high school.

Petitioner is a self-described "waterman", having spent much of his life on the water fishing and boating. Petitioner first obtained his U.S. Coast Guard master license in 1995 and had it renewed periodically. Petitioner obtained his Maryland commercial fishing license in 1996. Sometime before 2003 petitioners contemplated starting a charter fishing business to supplement their income. Before 2003 petitioners did not have any experience owning or operating a small business or a charter fishing business. During the years at issue petitioner maintained several related licenses, including his Coast Guard master license, a Maryland charter boat license, a Chesapeake Bay fishing license, and a Maryland guide license.

Between 2001 and early 2003 petitioners searched extensively for a used boat suitable for charter fishing operations in and around Chesapeake Bay. During this time petitioner informally surveyed charter boat captains regarding boat selection.

On January 30, 2003, petitioner wrote a business plan which indicated that he did not expect to make a profit initially but hoped to reach profitability within 3 years. He predicted the fuel cost of each trip to be $50. Petitioner inquired about the fees set by other charter captains and set his charter fees slightly below the prices reported to him. Petitioner did not seek any other advice while preparing his business plan.

Petitioners ordered a custom boat on February 3, 2003, at a contract price of $127,055. This price was later reduced to $122,435 to offset the cost of radar and depth-finding equipment petitioners purchased and installed themselves. The contract anticipated delivery on September 1, 2003, but petitioners did not receive the boat until November 3, 2003. After a modification to the propeller, petitioners deemed the boat suitable for charter fishing operations on November 15, 2003. The fishing season ended on November 30, 2003. As a result of the late delivery, petitioners canceled the charters they had booked for October and November. Petitioners did not receive any income from the charter fishing activity in 2003.

In 2004 petitioners made 21 paid fishing trips and at least 6 unpaid trips. Petitioners' gross receipts from their charter fishing activity in 2004 was $8,630. Petitioners did not pay for any advertising for their charter fishing activity in 2004.

In 2005 petitioners made 20 paid fishing trips and 1 or more unpaid trips. In an attempt to increase profitability, petitioners took their boat to Virginia Beach, Virginia, in late 2005 to operate winter charters.

Petitioners opened a bank account with SunTrust bank in 2003. The name on the account was "Charles L. Beasley, AKA Deborah J Charters." Petitioners deposited some of the receipts from their charter fishing activity into their personal account

and deposited some of their wages, as well as other moneys, into the SunTrust account.

Petitioners booked fewer charters each year than their business plan required for profitability. The number of charter fishing boats operating in petitioners' area increased from about 50 in 2003 to about 150 in 2008.

Petitioners did not keep any financial accounting records for their charter fishing activity, and they did not consult an accountant for advice on the financial operation of that activity. Petitioners' evidence of income from charter fishing is limited to a handwritten list of dates, amounts, and names. Although they retained fuel and supply invoices as well as credit card receipts for income tax preparation purposes, they did not use their records to evaluate profitability.

Petitioner believed that the charter boat might appreciate in value; however, he had no expectation that the value of the boat would increase enough to offset the losses incurred during the initial years of the charter fishing activity. Petitioners believe that the charter fishing activity did not reduce their capacity to perform the duties of their regular employment. A full-day fishing trip required each petitioner to work a 13-hour day.

Petitioners had their returns for each of the years at issue prepared by Tax Consultants of North America.  Petitioners' Forms 1040, U.S. Individual Income Tax Return, reported the following:

|  | 2003 | 2004 | 2005 |
|---|---|---|---|
| Combined wages | $128,290 | $113,272 | $93,162 |
| Itemized deductions | 27,318 | 27,953 | 27,767 |
| Exemption amount | 9,150 | 9,300 | 9,600 |
| Schedule C Charter Activity | | | |
| Receipts | -0- | 8,630 | 9,490 |
| Expenses | | | |
| Depreciation | 73,800 | 19,680 | 11,808 |
| Supplies | 12,308 | 13,879 | 11,514 |
| Other expenses | 12,031 | 12,567 | 10,138 |
| Interest on loan | 2,946 | 9,800 | 9,799 |
| Profit (loss) | (101,085) | (47,296) | (33,769) |
| Taxable Income and Overpayment | | | |
| Taxable income | -0- | 33,179 | 28,475 |
| Tax | -0- | 4,261 | 3,541 |
| Withholding | 14,706 | 11,518 | 8,957 |
| Overpayment (refund) | (14,706) | (7,257) | (5,416) |

Respondent issued a notice of deficiency on April 18, 2007. Respondent disallowed petitioners' expense deductions claimed on, Schedule C, Profit or Loss From Business, in excess of their Schedule C income, and determined deficiencies for 2003, 2004, and 2005.  Additionally, respondent determined a section 6662 accuracy-related penalty for each year.

## Discussion

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that these determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioners have alleged that section 7491(a) applies but have not established compliance with its requirements. Petitioners therefore bear the burden of proof.

I. Whether Petitioners' Charter Fishing Activity Was Not Engaged in for Profit

Respondent contends that petitioners' deductions from their charter fishing activity are subject to the limitations of section 183 because the activity was not a trade or business. If a taxpayer is not engaged in a trade or business under section 162, he generally may deduct the expenses related to an activity "not engaged in for profit" only to the extent of the gross income derived from the activity for the taxable year. Sec. 183(a) and (b)(2).

Section 162(a) provides that a taxpayer who is carrying on a "trade or business" may deduct ordinary and necessary expenses incurred in connection with the operation of the business. To be engaged in a trade or business within the meaning of section 162, "the taxpayer's primary purpose for engaging in the activity must

be for income or profit." Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). Profit means economic profit, independent of tax savings. Surloff v. Commissioner, 81 T.C. 210, 233 (1983).

A taxpayer seeking to deduct trade or business expenses under section 162 must establish that the underlying activity was engaged in with an actual and honest profit objective. Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983). The taxpayer must have entered into the activity, or continued the activity, with the actual, honest, and bona fide objective of making a profit. Filios v. Commissioner, 224 F.3d 16, 23 (1st Cir. 2000), affg. T.C. Memo. 1999-92; Dreicer v. Commissioner, supra at 644-645; sec. 1.183-2(a), Income Tax Regs. Objective indicia may be considered to establish the taxpayer's true intent. Dreicer v. Commissioner, supra at 644-645.

Because petitioners do not meet the statutory presumption of profit,[2] we consider whether they engaged in the charter fishing activity for profit. We consider all the facts and circumstances in determining whether a taxpayer entered into the activity for profit, placing greater weight upon objective facts than the taxpayer's statements of intent. Dreicer v. Commissioner, supra

---

[2] Sec. 183(d) generally provides that a taxpayer who engages in an activity that earns a profit in 3 of 5 consecutive years may be entitled to an electable presumption of a profit motive in the other 2 years.

at 645. The following nine nonexclusive factors are relevant in determining whether the taxpayer engaged in the activity for profit: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation. Sec. 1.183-2(b), Income Tax Regs.

1. Manner in Which the Taxpayer Carries On the Activity

The fact that the taxpayer carries on the activity in a businesslike manner may indicate that the activity is engaged in for profit. Elliott v. Commissioner, 90 T.C. 960, 972 (1988), affd. without published opinion 899 F.2d 18 (9th Cir. 1990); Engdahl v. Commissioner, 72 T.C. 659, 666 (1979); sec. 1.183-2(b)(1), Income Tax Regs. Relevant indicators include maintaining complete and accurate books and records, obtaining a business license, maintaining a separate business bank account, developing a written business plan, having a plausible strategy for earning a profit, and attempting changes in order to improve

profitability.  See <u>Morley v. Commissioner</u>, T.C. Memo. 1998-312;
<u>Holowinski v. Commissioner</u>, T.C. Memo. 1997-168; <u>Ellis v.
Commissioner</u>, T.C. Memo. 1984-50; sec. 1.183-2(b)(1), Income Tax
Regs.

Petitioners did not keep a journal or a book of accounts for
their charter fishing activity.  Petitioners instead retained
numerous credit card receipts and fuel and supply invoices that
reflect some of the expenses incurred with respect to that
activity.  Petitioners also produced a list of amounts and dates
that generally reflect their charter fishing income.  We are not
convinced that petitioners' recordkeeping represented anything
other than an effort to substantiate expenses claimed on their
returns.[3]

For a taxpayer's books and records to reflect a businesslike
activity, the taxpayer's books and records must provide a method
for measuring profits, controlling expenses, and evaluating the
overall performance of the operation.  <u>Golanty v. Commissioner</u>,
72 T.C. 411, 430 (1979), affd. without published opinion 647 F.2d
170 (9th Cir. 1981).  Petitioners did not present any evidence

---

[3] We note that the acceptable level of detail required of
books and records can vary according to the type of venture.
While rudimentary bookkeeping could have been acceptable for an
activity such as charter fishing, petitioners' records do not
begin to rise to that level.  Furthermore, while substantiating
expenses is necessary for any taxpayer, it is not sufficient to
satisfy the books of account requirement of sec. 1.183-2(b)(1),
Income Tax Regs.

that they prepared and maintained records to evaluate the profitability of their operations.[4]  Petitioners' failure to keep contemporaneous accounting records undermines their asserted profit objective.

Petitioner did obtain the licenses required to run a sole proprietorship charter fishing business for profit in Maryland. These licenses, however, appear to be necessary for any charter fishing activity to take place, and are not necessarily indicative of an actual profit motive.  We also note that petitioner obtained his Coast Guard master license and commercial fishing license several years before petitioners began any charter fishing activity.  Petitioner's licenses do not support, nor undercut, the asserted profit objective.

While petitioners maintained a separate bank account designated for the charter fishing activity, they commingled charter fishing and personal funds.[5]  Such commingling does not support a finding that petitioners conducted the activity in a businesslike manner that would demonstrate a profit objective. See Ballich v. Commissioner, T.C. Memo. 1978-497.

---

[4] To the contrary, petitioner testified on cross-examination that he was surprised at trial to learn just how unprofitable his business was during the years at issue.

[5] New ventures often require capital infusions, which might explain deposits of personal funds into a business bank account but would not explain deposits of business funds into a personal account.

Petitioners introduced a signed and dated business plan. While the existence of a plan supports the asserted profit objective, it cannot alone prove such an objective.

Petitioners made changes to their charter fishing activity at the end of 2005 and added winter charters from Virginia Beach, Virginia. Petitioners' decision to expand their charter fishing season supports their asserted profit objective.[6]

On balance, this factor supports respondent's determination.

2. Expertise of the Taxpayers or Their Advisers

Preparation for the activity by extensive study of its accepted business and economic practices or consultation with experts may indicate that the taxpayer has a profit objective where the taxpayer carries on the activity in accordance with those practices. Sec. 1.183-2(b)(2), Income Tax Regs.

Before petitioners began their charter fishing activity, petitioner called other charter operators in the area to determine their pricing structure in order to establish competitive rates. Petitioner's calls extracted little information regarding business practices or the likelihood of

---

[6] We note however, that while this change in business practice may have provided additional income, it did not result in a profit. Petitioners' 2006 and 2007 Schedules C include marked increases in receipts, but they still report substantial losses.

success in the charter fishing business.[7] Petitioners failed to establish that they acquired any expertise or took reasonable steps to acquire such expertise in the accepted business or accounting practices required to run a profitable business.

Petitioners relied on their knowledge of recreational fishing to make their charter fishing activity profitable, apparently not recognizing that they would also have to control expenses relative to income. The lack of consultation with small business experts undercuts petitioners' claim that they engaged in the charter fishing activity with a profit objective.

This factor supports respondent's determination.

3. Time and Effort Expended

The fact that a taxpayer devotes much of his personal time and effort to carrying on the activity may indicate an intent to profit, particularly if the activity does not have substantial personal or recreational elements. Sec. 1.183-2(b)(3), Income Tax Regs.

During the years at issue petitioners each maintained full-time employment that was not related to their charter fishing activity. Petitioners testified that a standard 8-hour charter fishing trip often required 13 hours of work from each petitioner. Nevertheless, as we discuss in greater detail below,

---

[7] Petitioner testified that charter captains are, by and large, a tight-lipped group, particularly when speaking to a potential competitor about business practices.

charter fishing has substantial personal or recreational aspects for petitioners.  Id.  The time petitioners spent working on the charter fishing activity is also consistent with their use of the boat for recreation.  See Warden v. Commissioner, T.C. Memo. 1995-176 (finding that the time taxpayers spent cleaning and maintaining their yacht was consistent with the use of the yacht for recreation), affd. without published opinion 111 F.3d 139 (9th Cir. 1997).

This factor is neutral.

4.    Expectation That Assets Used in the Activity May Appreciate in Value

A taxpayer's expectation that assets such as land and other tangible property used in an activity may appreciate in value and generate an overall profit may indicate that the taxpayer has a profit objective as to that activity.  Sec. 1.183-2(b)(4), Income Tax Regs.  An overall profit is present if net earnings and appreciation are sufficient to recoup losses sustained in prior years.  Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967).

Petitioners acknowledge that they had no expectation that the value of the boat would increase so much that it would offset the losses incurred during the first 3 years of their charter fishing activity.

This factor does not support petitioners' asserted profit objective.

5. Success of Taxpayer in Carrying On Other Similar or Dissimilar Activities

The fact that the taxpayer has engaged in similar activities in the past and converted them from unprofitable to profitable enterprises may indicate that he is engaged in the present activity for profit, even though the activity is presently unprofitable. Sec. 1.183-2(b)(5), Income Tax Regs.

Though petitioners attempt to connect their prior work experience and their charter fishing activity, we do not find any evidence that petitioners' estimating and law enforcement experience would indicate that they could transform an unprofitable charter fishing enterprise into a profitable one.

This factor does not support petitioners' asserted profit objective.

6. History of Income or Losses

A series of losses during the initial stage of an activity is not necessarily an indication that the activity is not engaged in for profit. Sec. 1.183-2(b)(6), Income Tax Regs. However, continued losses which cannot be explained may indicate that the activity is not engaged in for profit. Id.

Petitioners did not earn charter fishing receipts in excess of their expenses during any of the tax years at issue. Petitioners claimed losses of $101,085 for 2003, $47,296 for 2004, and $33,769 for 2005. Petitioners had no clients and no

trips in 2003, 14 clients and 21 trips in 2004, and 15 clients and 20 trips in 2005.

Although petitioners have offered explanations for continued losses, such as a slow economy and rising fuel costs, their reasons do not rise to the level necessary to offset the size of their losses for every year of their charter fishing activity. Further, petitioner's testimony regarding the tripling of the number of charter fishing operations in his area does not support his contention of a weak charter fishing market. We conclude that this factor does not support petitioners' asserted profit objective.

7. Amount of Occasional Profits

An opportunity to earn a substantial profit in a highly speculative venture is ordinarily sufficient to indicate that the activity is engaged in for profit even though losses or only occasional small profits are actually generated. Sec. 1.183-2(b)(7), Income Tax Regs.

Petitioners' charter fishing activity is not a highly speculative venture, such as oil prospecting. See sec. 1.183-2(a), Income Tax Regs. Further, there is no indication that a windfall profit may ever be generated by this particular activity. Therefore, this factor does not support petitioners' asserted profit objective.

8.  Taxpayer's Financial Status

The fact that the taxpayer does not have substantial income from sources other than the activity may indicate that the activity is engaged in for profit.  Sec. 1.183-2(b)(8), Income Tax Regs.  Substantial income from other sources may indicate the lack of a profit objective, however, particularly if there are personal or recreational elements in the activity.  Id.

Petitioners' wage income for each of the 3 years at issue is substantial; petitioners reported combined wages of $128,290 in 2003, $113,272 in 2004, and $93,162 in 2005.  Because of their Schedule C losses, petitioners realized significant tax savings for each year at issue.  Considering the personal and recreational elements involved in petitioners' charter fishing activity, as we discuss below, this factor undercuts petitioners' claim that they engaged in the activity with an intent to profit without regard for tax savings.  See Surloff v. Commissioner, 81 T.C. at 233; sec. 1.183-2(b)(8), Income Tax Regs.

This factor supports respondent's determination.

9.  Elements of Personal Pleasure

The presence of personal motives in carrying on an activity may indicate that the activity is not engaged in for profit, particularly where there are recreational or personal elements involved.  Sec. 1.183-2(b)(9), Income Tax Regs.  However, the fact that the taxpayer derives personal pleasure from engaging in

the activity, alone, is insufficient to foreclose for-profit
treatment.  Id.

Mr. Beasley has been an avid waterman all his life.  Fishing
can be a decidedly recreational activity, and there is no
evidence that petitioners do not derive personal pleasure from
the activity.  The personal pleasure or recreation that
petitioners derive from the charter fishing activity, while not
preclusive of a profit motive, also does not support petitioners'
assertion that they engaged in the activity primarily for profit.
See id.

## II.  Summary of Factors

Having considered the above factors and recognizing that no
one factor is controlling, we conclude that even though
petitioners may have entered into the charter fishing activity
hoping for eventual profitability, the facts presented do not
support a finding that, during the years at issue, petitioners
engaged in their charter fishing activity with a profit objective
as defined by section 1.183-2(b), Income Tax Regs.  Accordingly,
we hold that respondent correctly applied section 183 by allowing
expense deductions only to the extent of petitioners' income from
charter fishing.

## III. Penalties

By virtue of section 7491(c), the Commissioner has the
burden of production with respect to the accuracy-related

penalty.  To meet this burden, he must produce sufficient evidence indicating that it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Once the Commissioner meets this burden of production, a taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect.  Rule 142(a); see Higbee v. Commissioner, supra.

Respondent determined accuracy-related penalties under section 6662, which provides for a penalty equal to 20 percent of an underpayment if the underpayment is due to a substantial understatement of income tax.  Sec. 6662(a) and (b)(2).  Section 6662(d)(1)(A) defines a substantial understatement of income tax as an understatement that exceeds the greater of:  (i) 10-percent of the tax required to be shown on the return for the taxable year; or (ii) $5,000.  For each year at issue petitioners' return contained an understatement of income tax that meets the section 6662(d)(1)(A) definition, as follows:

| Year | Tax Required to be Shown | Tax Shown | Understatement |
|------|--------------------------|-----------|----------------|
| 2003 | $17,589 | -0- | $17,589 |
| 2004 | 13,869 | $4,261 | 9,608 |
| 2005 | 9,111 | 3,541 | 5,570 |

A taxpayer may avoid the application of an accuracy-related penalty by proving that he acted with reasonable cause and in good faith.  See sec. 6664(c)(1); see also Higbee v.

Commissioner, supra at 446-447; sec. 1.6664-4(a), Income Tax Regs. We analyze whether a taxpayer acted with reasonable cause and good faith by examining the relevant facts and circumstances and, most importantly, the extent to which the taxpayer attempted to assess his proper tax liability. See Neely v. Commissioner, 85 T.C. 934, 947 (1985); Stubblefield v. Commissioner, T.C. Memo. 1996-537; sec 1.6664-4(b)(1), Income Tax Regs. In order for the reasonable cause exception to apply, the taxpayer must prove that he exercised ordinary business care and prudence as to the disputed item. See Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 98 (2000), affd. 299 F.3d 221 (3d Cir. 2002).

Reliance upon the advice of a tax professional may establish reasonable cause and good faith for the purpose of avoiding liability for the section 6662(a) penalty. See United States v. Boyle, 469 U.S. 241, 250 (1985). Reliance on a tax professional is not an "absolute defense" but merely "a factor to be considered." Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). As a general rule, a taxpayer cannot shift the responsibility of filing an accurate return to a return preparer. Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987). However, we have held that under certain circumstances the taxpayer may avoid the imposition of a penalty if there was good faith reliance by the taxpayer on the advice of a competent adviser. Jackson v.

Commissioner, 86 T.C. 492, 539-540 (1986), affd. 864 F.2d 1521 (10th Cir. 1989).  Whether reasonable cause exists when a taxpayer has relied on a tax professional to prepare a return must be determined on the basis of all of the facts and circumstances.  See Neonatology Associates, P.A. v. Commissioner, supra at 98.  The taxpayer claiming good faith reliance on a competent adviser must demonstrate that:  "(1) The adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment."  Id. at 99.  Reliance on a return preparer is not reasonable where even a cursory review of the return would reveal inaccurate entries.  See Pratt v. Commissioner, T.C. Memo. 2002-279.

For the years at issue petitioners had their Federal tax returns prepared by a professional preparer.  There is no evidence that petitioners' preparer was not competent or that petitioners were not justified in relying on the preparer's expertise in preparing tax returns for individuals and sole proprietors.  It does not appear from the record that petitioners were anything other than forthright with their preparer.  Petitioners were not educated in accounting or tax return preparation.  Petitioners apparently relied on the preparer's judgment to complete and enter amounts on proper schedules on the

returns.  It appears that petitioners provided accurate information to their preparer for completion of their returns.

This is not a situation of omission of gross receipts or exaggeration of expenses, but rather the proper reporting of income and expenses governed by the Code, the regulations, and the interpretation of the Code by myriad cases.  On the basis of the entire record and considering the demeanor and candor of petitioners, we are satisfied that petitioners acted in good faith in operating their charter fishing activity and in reporting the income and expenses therefrom.  The Court finds that petitioners' reliance on their preparer was reasonable.

We therefore do not sustain respondent's determination that petitioners are liable for the accuracy-related penalties pursuant to section 6662.

To reflect our disposition of the issues,

<u>Decision will be entered for respondent with respect to the deficiencies and for petitioners with respect to the penalties</u>.